ARCHER & GREINER
A Professional Corporation
21 Main Street, Suite 353
Hackensack, NJ 07601
(201) 342-6000
Attorneys for Plaintiff
    Jet911, LLC

BY:    RONALD D. COLEMAN, ESQ.
       KATE A. SOZIO, ESQ.


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JET911, LLC.,** | Civil Action: |
| *Plaintiff*, | |
| vs. | |
| **SIMCHA SHAIN,** | |
| *Defendant*. | |

## VERIFIED COMPLAINT

Plaintiff Jet911, LLC, by way of Complaint against Defendant Simcha Shain, through its undersigned attorneys alleges as says as follows:

### THE PARTIES

1.      Plaintiff Jet911, LLC, is a Delaware limited liability company registered to do business in the State of New York with its principal place of business at 120-10 Queens Boulevard, Kew Gardens, New York ("Jet911").

2.     Simcha Shain is a former employee and officer of Jet911 and a resident of Lakewood, New Jersey.

### JURISDICTION AND VENUE

3.     This action arises out of the Trademark Act of July 5, 1946, as amended (15 U.S.C. §1051 *et. seq.* (the "Lanham Act"), the Anticybersquatting Consumer Protection Act (ACPA), (15 U.S.C. § 1125(d)), statutory and common law provisions affecting unfair competition and fiduciary, and other business and property matters and under the New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-50 *et seq*.

4.     The Court has original subject matter jurisdiction over this action pursuant to 17 U.S.C. § 1121 (a) and pursuant to 28 U.S.C. §1331 and 1338.  The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over claims arising under state law because all of the claims herein arise out of a common nucleus of facts. The Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) because defendant Shain is a resident of the state of New Jersey and the matter in controversy exceeds the sum of $75,000 exclusive of interests or costs.

5.     The Court has personal jurisdiction over Defendant on the ground of general jurisdiction because he is a resident of the State of New Jersey.  The Court also has specific jurisdiction over Defendant because a significant percentage or majority of the Defendant's acts giving rise to this action occurred in New Jersey.

6.     Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and (c) because Defendant is subject to personal jurisdiction in this District and a substantial part of the events giving rise to Plaintiff's claims, including Defendant's infringing acts, occurred in the District.

## FACTS RELEVANT TO ALL COUNTS

**A.   ELI ROWE: AIRCRAFT OWNER, JET PILOT,
        PARAMEDIC, ENTREPRENEUR, AND CREATOR OF
        JET911**

7.   Eli Rowe is a jet pilot and owner, paramedic and businessman who founded Jet911[1] in 2014 to further his decade-plus-long avocation of providing emergency aeromedical transport services to those in need of critical care while traveling.

8.   Jet911 is a unique enterprise whose existence, scope and effect on the lives of others is described in a compelling testimonial video featuring interviews with real-life beneficiaries of its services found at https://youtu.be/IUFlurze9qo, a screenshot from which is shown below.



**Eli Rowe of Jet911**

---

[1] Jet911, LLC's original name was StatFlight, LLC. In December 2015, Mr. Rowe changed the business name to Jet911, LLC.  See Exhibit A attached hereto.

9.      The story of Jet911's success, and the impact it has already had on lives and hearts in the short time of its existence, is a testament to the one-of-a-kind combination of skills, experience, passions, sacrifice and financial commitment by its founder and owner, Eli Rowe.

10.     A distinguished pilot who is listed in the prestigious Federal Aviation Administration (FAA) Airmen Certification Database, which recognizes pilots who have met or exceeded the high educational, licensing and medical standards established by the FAA, Mr. Rowe prepared himself for the eventual founding Jet911 by graduating *summa cum laude* from the business program at Touro College in New York City – which he attended while qualifying as one of New York City's youngest Level 4 Paramedics.

11.     Mr. Rowe utilized his drive, talent and focus to become a highly successful serial entrepreneur, and Jet911 is merely one of many healthcare-related enterprises.  It is an outgrowth of Romex Examinations, Inc., a company Mr. Rowe founded in 1991 ("Romex"), and PDC Corp. and Parameds, Inc., which Mr. Rowe founded in 1998, premier providers of healthcare data retrieval and summary services, outsourced and remote underwriting, exam solutions, and expert automated underwriting and claims support for the life, disability, long-term care, and health insurance industries (collectively, "Parameds").

12.     In addition to his business success, Mr. Rowe is also a prominent volunteer in numerous industry and communal organizations throughout metropolitan New York. He acts as the Secretary and Treasurer of the Metropolitan Underwriters Discussion Group, and is an active volunteer paramedic, communal activist, husband and father of four.

13.     Parameds, which is wholly-owned by Mr. Rowe, is the sole owner of all shares in Jet911, LLC, as set forth on its Certificate of Incorporation, attached hereto as Exhibit B.

14.     Romex, which is wholly-owned by Mr. Rowe, is the sole owner of Jet911's multiple jet aircraft, which are used for by Jet911 for business flights as well as to transport sick and injured patients.

15.     These airborne mobile intensive care units are equipped to provide critical-care services and a multitude of highly technical, life-saving functions providing the ultimate care in the air as well as comfort for both patients and family members accompanying their loved ones at these stressful times.

16.     Over the course of more than a decade, Mr. Rowe acquired his air fleet so that, along with the use of chartered jets and chartered air ambulances, he could make use of his considerable financial success, talents as a pilot and passion for helping those in need to develop a distinguished volunteer and brokerage  program providing air ambulance flights and charters in the areas of medical escort for sick and injured adults at little to no cost throughout much of the world.

17.     When in 2014 Mr. Rowe decided to combine his renowned activities as a volunteer air ambulance service with the development of a complementary commercial endeavor – that is, to create what would become Jet911 – he put together a team that included a range of professionals at various levels.

18.     For example, at Defendant's suggestion, Mr. Rowe hired Dr. Mark Merlin, the past Chair of the New Jersey Mobile Intensive Care Unit Advisory Board and Vice Chairman of Emergency Medicine at Newark Beth Israel Medical Center/Barnabas Health and EMS Fellowship Director, for the key position of Medical Director of Jet911.

19.     Dr. Merlin was excited to join the Jet911 team and recognized its potential, and agreed to work for Jet911 without salary until the company met certain milestones, with the

understanding that he, along with the rest of the Jet911 team, would eventually be rewarded for doing so.

20.     Dr. Merlin's commitment to Jet911 during the period of deferred pay, which lasted through most of 2015, ran to many hundreds of hours, which included not only ambulance and other flights but an immense amount of time spent on business development, interacting with accreditation officials and technical development.

21.     Notwithstanding this level of commitment, Dr. Merlin's stellar credentials, his high professional profile and the opportunity costs involved, at no time was Dr. Merlin offered, nor did he request or expect, an equity share in Jet911, which he understood to have been made possible entirely by the financial, personal and conceptual framework laid down for over a decade by Eli Rowe.

22.      At the lower end of the team building spectrum, Mr. Rowe also recruited administrative and ministerial personnel such as Defendant, whom Mr. Rowe had encountered and come to like through the latter's work as a Hatzolah EMS volunteer paramedic in Lakewood, New Jersey.

23.     Although at the time Defendant's main employment was as an hourly shift paramedic and he had no successful management, aviation or enterprise experience, Mr. Rowe's impression of Mr. Shain was that he was hardworking and that he had potential to grow as a manager in the emergency medical services field, given the right opportunity.

24.     Eager to provide that opportunity and ready to place great trust in the journeyman paramedic, in 2014 Mr. Rowe generously appointed Mr. Shain as Chief Operating Officer of what was to become Jet911 with the hopes that he would grow and develop within the position.

114371958v4

25.     In contrast to a team member such as Dr. Merlin, it was understood that Defendant's ability to contribute to the new enterprise's future success as Chief Operating Officer and occasional paramedic was relatively modest – and was certainly not comparable to that of Jet911's founder and owner, Mr. Rowe.

26.     For example, in terms of commerce, unlike Mr. Rowe, Mr. Shain, on information and belief, had neither a business education nor a track record of establishing and running highly successful enterprises.

27.     Similarly, in terms of aviation, unlike Mr. Rowe, Mr. Shain was not a commercial, instrument-rated multi-engine pilot qualified to fly numerous jets – or, indeed, a pilot at all.

28.     On information and believe Defendant has not, since being discharged from Jet911, become a pilot, nor has he bought or acquired any aircraft.

29.     Similarly, whereas the entire business of Jet911 was premised on revenue generated by the use of jet airplanes owned by Mr. Rowe – without which the business would literally have never  gotten off the ground – Defendant did not own any aircraft.

30.     Likewise, with regard to capital, unlike Mr. Rowe – who has built enterprises and amassed assets conservatively valued at tens of millions of dollars – Mr. Shain was employed as an hourly paramedic before joining Jet911 and acknowledged to Mr. Rowe that he had no capital to invest and no prospect of obtaining any.

31.     Given this understanding of the modest contribution Defendant brought to the table, and because Jet911 was a startup, Defendant clearly understood that, like other senior participants in the project, such as Dr. Mark Merlin, chief medical officer, Ms. Sarah Scharf, director of special projects, and of course Mr. Rowe – all of whom worked hundreds of hours

7

and requested no compensation for their efforts during the startup period – Defendant would receive no salary in connection with his work on behalf of Jet911until operations became profitable and the business was established.

32.     Moreover, it was understood that when, eventually, Mr. Shain would draw a salary or receive other compensation, such compensation would be based on his proportional contributions and efforts to the success of Jet911 and company's success.

33.     In light of all the foregoing, it was clearly understood that, just as no team member – even the like of Dr. Merlin – got, received or expected equity in Jet911, at no time did Mr. Rowe give or promise to give Mr. Shain an equity interest in Jet911 under any circumstances.

34.     Moreover, at no time did Mr. Shain, prior to the wrongful acts of Defendant complained of below, communicate to Mr. Rowe or otherwise demand, claim to have, or request, an equity interest in Jet911.

**B.      ELI ROWE: AIRCRAFT OWNER, JET PILOT, PARAMEDIC, ENTREPRENEUR, AND CREATOR OF JET911**

35.     That no one in the Jet911 team besides Mr. Rowe had or expected an equity share in the company is not a function merely of the fact that Jet911 was essentially an outgrowth of over a decade of voluntary air ambulance missions and brokerage Mr. Rowe had been running on his own; nor of the fact that Jet911 was, in many ways, a commercialization of one of the public aspects of "Eli Rowe" himself; or even that Mr. Rowe was a stern, "take it or leave it" entrepreneur who "ran things his way."

36.     Rather, the reason Jet911 is 100% owned by Mr. Rowe is that, as has been adverted to above, Jet911 could only exist because Mr. Rowe placed an enormously valuable

8

asset that is nothing more or less than essential to its mission – a high-end jet fleet – at its disposal.

37.     In particular, of the Jet911 air ambulances Mr. Rowe provided for Jet911 is a Gulfstream G200 that is currently being fit out and customized for air ambulance use.

38.     The G200 supports a crew of two and can carry up to eleven passengers. It has a cruising speed of 459 KTS and a maximum cruising speed of 470 KTS utilizing two Pratt & Whitney Canada PW306A engines.

39.     The 2014 purchase price of the Gulfstream G200 jet Mr. Rowe obtained for Jet911 was over $6 million.

40.     Defendant made no contribution toward the purchase, financing or maintenance of the Gulfstream G200.



**As shown in the Jet911 video cited in ¶8 and described in the narration, the size of the Jet911 Gulfstream G200 purchased by Mr. Rowe for Jet911 enables family members to accompany patients utilizing air ambulance services in comfort and convenience during a time of extraordinary stress.**

41.     Mr. Rowe's Cessna Citation 525 is also utilized by Jet911.  This aircraft, which operates with two Williams FJ44-1AP engines, utilizes a crew of one or two and can carry up to five passengers.

42.     The Citation 525 twin engine jet was purchased for approximately $3.5 million.

43.     Just as Defendant made no contribution toward the purchase of the Gulfstream G200, Defendant made no contribution toward the purchase, financing or maintenance of the Citation 525 used by Jet911.



The Cessna Citation 525 and Gulfstream C200 made available by Mr. Rowe for Jet911.

44.     Jet911 utilized the fleet assets, shown above, in addition to other chartered jets and air ambulances, for services besides air ambulance transport care, such as medical escort services on commercial flights for those deemed fit to travel, but who require skilled medical assistance or specialized equipment to do so, as well as private luxury jet charter services arranged through brokered or contracted "FAR 135" licensees.

C.     **DEFENDANT'S UNLAWFUL CONDUCT**

45.     Notwithstanding the implicit trust placed in him by Mr. Rowe and the extraordinary opportunity put at his disposal, Mr. Shain wasted little time before undertaking to exploit that trust; to put into place a plan to divert corporate opportunities to his personal benefit;

and to repay Mr. Rowe's kindness with rank ingratitude in a outrageous attempt to literally steal the Jet911 business that Mr. Rowe had created, financed and – most ironically – presented to Mr. Shain as a once-in-a-lifetime opportunity for business experience, growth and a career from right under Mr. Rowe's nose.

46.     Although Mr. Rowe hoped that Defendant would develop into a business generating executive deserving of the title bestowed on him, among the ministerial responsibilities which Mr. Rowe actually executed was to  set up and maintain Jet911's website and business phone number.

47.     These tasks required little more effort, skill and competence than would be expected of a trusted secretary or bright intern.

48.     Defendant, however – who was not developing business or showing signs of maturing into a mature executive – recognized that the ministerial responsibility with which he had been entrusted represented a tailor-made opportunity for extortion in the hands of devious ingrate with little to lose.

49.     Simcha Shain was that devious ingrate.

50.     Defendant Shain's fecklessness in this regard was first manifest, in retrospect, when in October of 2014 Mr. Rowe instructed him to reserve the domain name Statflight.com for the new business, reflecting the firm's original name.

51.     Defendant reported back to Mr. Rowe that the name was not available, having been registered by another party.

52.     After some negotiation, Mr. Rowe authorized Defendant to purchase the domain name from the registrant for $1,500.

11

53.     Defendant did as he was instructed, and, using Mr. Rowe's credit card, purchased the domain name Statflight.com for $1,500 for the use of the company.

54.     Instead of registering the domain to the company, however, Defendant registered it in his own name and retained the registration in his own domain management account.

55.     When, approximately one year later, the company changed its name to Jet911, LLC,  Defendant again registered the domain name Jet911.com on behalf of the company.  This time, however, Defendant paid the approximate $2.99 registration fee using his own personal credit card.

56.     Again, however, unbeknownst to Mr. Rowe, Defendant listed himself personally – instead of Jet911, Mr. Rowe or an entity owned by Mr. Rowe – as the owner of Jet911.com domain.

57.     Defendant, confident of his "leverage" under the primitive "axiom" that "possession is nine-tenths of the law," then waited for the moment to unwind his "ingenious" plan:  Demanding nothing less than a one-half interest in Jet911 under the threat of using the Jet911.com domain name to divert for his own benefit brand identity that Mr. Rowe had, in the short time of the company's operations, successfully established by associating it with the renown already associated with his decade-plus of activity in the air ambulance field.

58.     In or around March of 2016, Mr. Rowe mentioned to Defendant that it had come to his attention that Defendant had registered Jet911.com in his own name. Assuming that Mr. Shain had done so as an oversight or a shortcut, Mr. Rowe requested that Defendant transfer ownership of the domain name to Plaintiff.

59.     Defendant responded to Mr. Rowe by shifting the conversation to one in which he asked, in a calculated, artificial manner, about when "we" – meaning Jet911 – would start paying salaries to the various participants in the startup.

60.     Defendant was at pains to manufacture a dialogue designed to trick Mr. Rowe into acknowledging, if only by a failure to protest, that he and Defendant were equal partners in Jet911, notwithstanding the preposterous imbalance between the two parties' respective contributions to the enterprise and the obvious fact that Defendant was merely a titular officer and employee.

61.     When Mr. Rowe refused to take the bait, Defendant, dropping all efforts at artifice and without any shame, put his extortion demand front and center, refusing to transfer the Jet911.com domain to Jete911 and informing Mr. Rowe that he would hold the domain name hostage unless Mr. Rowe would enter into a written agreement "acknowledging" that Defendant owned a 50% interest in the company.

62.     Mr. Rowe refused Defendant's demand.

63.     Rather than lashing out at Defendant, however, Mr. Rowe urged him to reconsider his rash behavior and to keep in mind the opportunity for eventual growth with the company as a titular officer without an equity stake, as was the case for all the executives that worked in his various businesses.

64.     Defendant refused Mr. Rowe's olive branch, insisting that his extortionate demand be met or that he would follow through on his threat to destroy Jet911.

65.     After several days, Mr. Rowe again wrote to Defendant, who had not relented, and suggested that the two of them find a way to work out a friendly disengagement.

13

66.     After receiving no response from Defendant, it came to Plaintiff's attention that all personnel at Jet911 had stopped getting emails and phone calls.  Defendant, of course, controlled both Jet911's phone number and the domain and email service.

67.     Later, Plaintiff learned that Defendant had modified the website at Jet911.com – which Defendant controlled – maintaining most of the content but directing prospective customers to an email address – info@jet911.com – and a telephone number that no longer went to Jet911.

68.     Rather, both Internet users seeking services from Jet911 by email or phone were now directed instead not to Jet911 but to Simcha Shain, as was obvious from the fact that the phone number shown on the modified website was now his own mobile number.

69.     Defendant's diversion of customers seeking Jet911 to himself, of course, gave the lie to his claim that he was a shareholder of Plaintiff or otherwise had any beneficial interest in the economic well-being of Plaintiff, which was being economically destroyed by his conduct.

70.     While Defendant lacks the capital, the aircraft, the pilot's license or the business acumen to set up an actual operational medevac operation comparable to that of Jet911, Defendant has, on information and belief, by trading on the goodwill, personalities and intellectual property of Jet911, established a "referral service" through which he contracts with third parties to provide premium emergency medical transport services, medical escort and luxury charter services.

71.     By this conduct, Defendant is intentionally deceiving consumers, including not only patients but healthcare providers and institutions such as hospitals and clinics, who have been confused into thinking that they are arranging to obtain such services from the Jet911 and its professional staff, including Eli Rowe and Mark Merlin – whose photographs remain on the

14

hostage Jet911.com website – but are ultimately receiving services from Defendant that have nothing to do with either Mr. Rowe or Dr. Merlin.

72.     On information and belief, Defendant received and unless enjoined by this Court will continue to receive commissions, profits, fees and other value for referring medical transport and luxury charter customers to such third parties.

73.     Having been wrongfully deprived by Defendant of control over the Jet911.com domain, Jet911 was immediately forced to create a new, interim website, FlyJet911.com, and a temporary phone number, 844-JET-9111 and to roll out a stop-gap marketing program to enable Jet911 to continue operations.

74.     Few if any prospective customers seeking Jet911, however, ever reach the FlyJet911.com website, however, because Jet911.com is so well established in search engines and because Defendant's online offerings are so confusing that consumers are not aware that he has almost literally "hijacked" the real Jet911 business.

75.      On April 7, 2016, counsel for Plaintiff delivered a letter to Defendant informing him of his termination for cause and demanding that Defendant immediately cease infringing Plaintiff's JET911 Trademark, transfer ownership of Jet911.com to Plaintiff and stop masquerading as the real Jet911.  A true copy of the April 7, 2016 letter is attached hereto as Exhibit C.

76.     Notwithstanding these warnings, Defendant refused to transfer ownership and control of Jet911.com.

77.     In his response letter dated April 8, 2016 counsel, a true copy of which is attached hereto as Exhibit D, counsel for Defendant asserted that because Defendant claimed to be a 50% owner of Jet911, he was within his rights to unilaterally seize 100% of the business for his

15

personal benefit and even to destroy Jet911 based on Mr. Rowe's failure to give in to his extortionate demands.

78.     Defendant's counsel's letter continued in a similar preposterous vein, insisting that Defendant owned a 50% share of an aviation / luxury services / healthcare / company with an increasingly dominant brand position in one of the world's most lucrative and influential socioeconomic subcultures – into which Defendant entered into no partnership agreement, was issued no shares, made no capital contribution, worked at part time, and had by virtue of that participation foregone no identified or notional alternative opportunity whatsoever – because the "idea" had been Defendant's "brainchild."

79.     Defendant's April 8, 2016 letter continued on from its "brainchild theory" of entitlement to corporate equity by adverting to Mr. Shain's "arrang[ing] for the use of the airplane initially used by the company" – which was bought and paid for by Mr. Rowe – and even includes a claim to ownership based Defendant's "organiz[ing] the company's telephone lines [and] trademark applications . . ."

80.     Even more remarkably, Defendant lawyer's letter of April 8th even has the temerity to state, in one breath, that Defendant is a fifty percent owner of Jet911 who "handled virtually all of the day-to-day operations of the company" – other than those involving operations such as buying, financing or flying jet airplanes – while in the next breath it states that "the web url 'jet911.com' was purchased by and is owned by Mr. Shain as his sole and personal property."

81.     Defendant's audacious program to make a grab of the supposed fifty-percent stake in the company a *fait accompli* took a bizarre turn when, on or around May 6, 2016, Defendant, through counsel, file an application with the United States Patent and Trademark Office to register the word JET911 as a trademark in connection with emergency medical

transport services in International Classes 039 and 044, based on a date of first use of November 18, 2015 – this time, not in his own name, but in the name of Jet911, LLC – from which Defendant has been discharged, and without any authority from plaintiff.

82.     The description of services for the JET911 Trademark under IC 039 includes, "Air charter services."

83.     The description services for the JET911 Trademark under IC 044 includes, "Medical services, namely, providing medical services to patients during transport."

84.     Mr. Rowe learned that Defendant had applied to register the wordmark JET911 listing Mr. Rowe's company, Jet911, LLC, as the mark owner on or around May 20, 2016.

85.     Defendant's operation of the Jet911.com website constitutes trademark infringement, false advertising, cybersquatting, tortious interference with prospective economic advantage, and unfair competition.

86.     If Defendant is permitted to continue operating Jet911.com and infringing Plaintiff's JET911 trademark, Plaintiff's business will be irreparably harmed.

### FIRST CAUSE OF ACTION
### Common Law Trademark Infringement

87.     Plaintiff repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

88.     Plaintiff has made and continues to make wide use of the JET911 name and trademark since 2015 in connection with the services it provides, as described herein.

89.     Plaintiff has used and continues to use the JET911 trademark on garments worn by crew members, including sweaters and caps; on aircraft used to deliver its services; in print advertising; and in online advertising and promotion, including but not limited to social media such as Facebook.

17

90.     Plaintiff's JET911 trademark has been recognized by the public, especially the orthodox Jewish community which it serves most predominantly, and has that trademark has been repeatedly used in connection with descriptions of the services provided by Plaintiff in print and online media.

91.     These descriptions, accounts and reports are particularly prone to recollection, which have enhanced the ability of JET911 to develop recognition for its trademark in a short time, because of the memorable, high-profile, glamorous and sympathetic nature of the accounts they describe, combining as they do aspects of high-speed jet air rescue or exclusive, private jet travel; the frequent involvement of famous benefactors or other well-known communal leaders; the central focus on a sick, injured or recently deceased member of the community and, typically, of his or her loved ones or other supporters; and the heroic aspect of pilots, medical personnel and others who have contributed to provide medical care, rescue or comfort in such dramatic circumstances.

92.     Plaintiff's JET911 trademark is in full force and effect, and the trademarks thereof and the goodwill of the business of Plaintiff in connection with which its trademark is used has never been abandoned.

93.     Plaintiff's JET911 Trademark and the goodwill associated therewith is of inestimable value to plaintiff.

94.     Upon information and belief, Defendant commenced the aforementioned activities with full knowledge of and by reason of the fact that the JET911 Trademark is highly valuable.

95.     Defendant's use of the JET911 Trademark has been without the consent of the Plaintiff.

114371958v4

96.     The activities of Defendant complained of herein constitute willful and intentional infringement of the JET911 Trademark as protected by common law.  Defendant has acted in complete disregard of Plaintiff's rights and in spite of Defendant's knowledge that its unauthorized use of the JET911 Trademark or any mark likely to be confused therewith or either of the forms of its mark infringes Plaintiff's rights.

97.     Defendant's infringement of the JET911 Trademark is likely to cause confusion and mistake in the minds of the purchasing public, and has done so.

98.     Defendant's infringement of the JET911 Trademark tends to and does falsely create the impression that the products and services sold by Defendant are authorized, sponsored, or approved by Plaintiff, and has done so.

99.     Alternatively, or in addition to the foregoing, Defendant's infringement of the JET911 Trademark is likely to cause reverse confusion, tending to and falsely creating the impression that the products and services sold by Plaintiff are either authorized, sponsored, or approved by the Defendant or the false impression that Plaintiff is infringing on the rights of Defendant; moreover, such reverse confusion has occurred.

100.    Plaintiff is suffering irreparable harm and damage as a result of the acts of Defendant as aforesaid in an amount thus far not determined and has no adequate remedy at law.

**SECOND CAUSE OF ACTION**
**False Designation of Origin and False Description**
**15 U.S.C. §1125(a)(1)(A)**

101.    Plaintiff repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

102.    Upon information and belief, Defendant has used in connection with the sale of its services, false designations of origin and false descriptions and representations, including symbols that tend falsely to describe or represent such its products and services.

103.   Upon information and belief, defendant has caused the aforementioned its products and services to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to the detriment of plaintiff.

104.   Defendant's use of the JET911 Trademark constitutes the use of false designations of origin and false descriptions and representations tending falsely to describe or represent services sold by Defendant.

105.   Upon information and belief, Defendant has distributed, offered for sale or sold its services under the JET911 Trademark with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the reputation of Plaintiff, and improperly to appropriate the valuable trademark rights of Plaintiff.

106.   Alternatively, or in addition to the foregoing, Defendant's conduct causes reverse confusion, tending to and falsely creating the impression that the products and services sold by Plaintiff are either authorized, sponsored, or approved by Defendant or the false impression that Plaintiff is infringing on the rights of Pefendant; moreover, such reverse confusion has occurred.

107.   Plaintiff is suffering irreparable harm and damage as a result of the acts of Defendant as aforesaid in an amount thus far not determined and has no adequate remedy at law.

### THIRD CAUSE OF ACTION
#### False Advertising
#### 15 U.S.C. §1125(a)(1)(B)

108.   Plaintiff repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

109.   Upon information and belief, Defendant has used in connection with the sale of its services, false designations of origin and false descriptions and representations, including symbols that tend falsely to describe or represent its services and have caused its services to enter

into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to the detriment of Plaintiff.

110.    Defendant's actions as aforesaid constitute commercial false descriptions and representations in commercial advertising and promotion tending falsely to describe or represent goods sold by Defendant because Defendant's services are not comparable in style, quality or otherwise with Plaintiff's services.

111.    Upon information and belief, Defendant has made the false statements referred to above all with the express intent of causing confusion and mistake, deceiving and misleading the purchasing public, trading upon the reputation of Plaintiff, and improperly appropriating the valuable trademark rights of Plaintiff.

112.    Plaintiff is suffering irreparable harm and damage as a result of the acts of Defendant as aforesaid in an amount thus far not determined and has no adequate remedy at law.

## FOURTH CAUSE OF ACTION
### Common Law Trademark Dilution

113.    Plaintiff repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

114.    The use by Defendant of the JET911 Trademark in connection with its services has diluted, will and is likely to continue to dilute the distinctive quality of the JET911 Trademark by tarnishing the JET911 Trademark and the goodwill of the business associated with it.

115.    The activities of Defendant complained of herein constitute willful and intentional conduct intended to trade on Plaintiff's reputation and to cause dilution of the JET911 Trademark.

114371958v4

116.    Plaintiff is suffering irreparable harm and damage as a result of the acts of Defendant as aforesaid in an amount thus far not determined and has no adequate remedy at law.

### FIFTH CAUSE OF ACTION
### Common Law Unfair Competition

117.    Plaintiff repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

118.    Upon information and belief, Defendant has intentionally and with bad faith appropriated the JET911 Trademark and the Jet911 website with the intent of causing confusion, mistake, and deception as to the source of its services or to otherwise wrongfully benefit from the infringement of Plaintiff's rights without due compensation.

119.    Upon information belief, Defendant has acted with the intent to palm off its goods as those of Plaintiff, to place others in the position to palm off their goods as those of Plaintiff, or to otherwise deceive the public.  Such acts amount to trademark infringement, unfair competition and wrongful misappropriation under the common law.

120.    Plaintiff is suffering irreparable harm and damage as a result of the acts of Defendant as aforesaid in an amount thus far not determined and has no adequate remedy at law.

### SIXTH CAUSE OF ACTION
### New Jersey Statutory Unfair Competition
### (N.J.S.A. §56:4-1)

121.    Plaintiff repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

122.    By reason of the aforesaid acts, Defendant has wrongfully appropriated for his own use Plaintiff's business name, Plaintiff's JET911 Trademark, and Plaintiff's Jet911 website in violation of N.J. Stat. §56:4-1.

22

123.   Plaintiff is suffering irreparable harm and damage as a result of the acts of Defendant as aforesaid in an amount thus far not determined and has no adequate remedy at law.

## SEVENTH CAUSE OF ACTION
### Tortious Interference with
### Prospective Economic Advantage

124.   Plaintiff repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

125.   Plaintiff was and is in pursuit of business from its existing and potential customers and therefore had and has a reasonable expectation of prospective economic advantage with respect to those customers.

126.   Defendant knew or should have known of Plaintiff's expectation of prospective economic advantage.

127.   Defendant wrongfully, knowingly, intentionally and without justification interfered with Plaintiff's prospective economic advantage.

128.   As a result of Defendant's interference, Plaintiff has lost prospective gain.

129.   Defendant's interference has proximately caused and will proximately cause resulting damage to Plaintiff.

130.   Unless Defendant is restrained and enjoined from continuing to unlawfully interfere with Plaintiff's prospective economic advantage, Plaintiff will suffer irreparable harm for which there is no adequate remedy at law.

## EIGHTH CAUSE OF ACTION
### Fraud/Misrepresentation

131.   Plaintiff repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

132.     In contravention of Eli Rowe's request and his fiduciary duties to Plaintiff, Defendant fraudulently registered Jet911.com in his personal name, rather than in Plaintiff's name.

133.     Defendant misrepresented or failed to disclose to Plaintiff that Defendant registered the Jet911.com domain name to himself.

134.     Plaintiff relied upon the aforesaid misrepresentation or omission to its detriment, as a result of which Plaintiff has suffered damages.

135.     Defendant's misrepresentation or omission as aforesaid has proximately caused or will proximately result in damage to Plaintiff.

## NINTH CAUSE OF ACTION
### Breach of Fiduciary Duty

136.     Plaintiff repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

137.     As Chief Operating Officer of Plaintiff, Defendant owed fiduciary duties of care, loyalty and good faith to Plaintiff.  Defendant's fiduciary duties included obligations to act prudently in the operation of Plaintiff, to discharge his actions in good faith, to act in the best interests of Plaintiff, and to put the interests of Plaintiff before his own.

138.     Defendant breached his fiduciary duty of loyalty and good faith by the foregoing wrongful acts, including, among other things, fraudulently registering the domain name Jet911.com in his own name in an attempt to extort a 50% ownership interest in the Company from Eli Rowe.

139.     Defendant's breach has proximately caused and will continue to cause damage to Plaintiff.

114371958v4

## TENTH CAUSE OF ACTION
## Competition with Employer or Principal

140.    Plaintiff repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

141.    Defendant, as an employee of Jet911, LLC, had a duty of loyalty to his employer.

142.    Defendant unlawfully violated that duty by forming a competing business and by diverting corporate opportunities which, as part of his responsibilities, he should have directed to Plaintiff to his own, competing, endeavor.

143.    Defendant's conduct amounted to direct competition by him against his own employer contrary to the law of New Jersey.

144.    Defendant's breach has proximately caused and will continue to cause damage to Plaintiff.

## ELEVENTH CAUSE OF ACTION
## Cybersquatting (15 U.S.C. 1125(d))

145.    Plaintiff repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

146.    In contravention of his fiduciary duties owed to Plaintiff, Defendant wrongfully registered the Jet911.com domain name to himself, rather than to Plaintiff.

147.    Defendant had and has a bad faith intent to profit from the registration and use of the Jet911.com website by creating an association with Plaintiff and Plaintiff's common law trademark JET911.

148.    Defendant's wrongful conduct has proximately caused and will proximately cause resulting damage to Plaintiff.

149.    Defendant's acts, as aforesaid, are in violation of the Anticybersquatting Consumer Protection Act under Section 43 of the Lanham Act, 15 U.S.C. § 1125(d).

25

150.    Unless Defendant is restrained and enjoined from continuing to unlawfully using Jet911.com, Plaintiff will suffer irreparable harm for which there is no adequate remedy at law.

### TWELFTH CAUSE OF ACTION
### Declaratory Judgment (N.J.S.A. 2A:16-50 *et seq.*)

151.    Plaintiff repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

152.    As alleged above, plaintiff Jet911 is a "person" whose rights, status or other legal relations are affected by an alleged contract and who is entitled to have a question of construction or validity arising with respect to same, and to obtain a declaration of rights, status or other legal relations thereunder, pursuant to N.J.S.A. 2A:16-50 *et seq.*

153.    Plaintiff seeks and is entitled to a declaratory judgment verifying and confirming that Defendant is not a partner, owner, beneficial owner, shareholder, or otherwise entitled by reason of law or equity to an equivalent interest thereto in Jet911.

### THIRTEENTH CAUSE OF ACTION
### Replevin and unlawful retainer (N.J.S.A. 2B:50-1 *et seq.*)

154.    Plaintiff repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

155.    Defendant has wrongfully and unlawfully taken possession of, retained custody of and withheld from Plaintiff certain chattels, including valuable medical equipment and other things, that are the property of Defendant.

156.    Plaintiff has made demand for the return of said chattel, with Defendant has refused to reply.

157.    Defendant has been damaged by Defendant's conduct.

26

## PRAYER FOR RELIEF

WHEREOF, Plaintiff demands:

A.     That a preliminary and permanent injunction be issued enjoining Defendant and his agents, servants, employees and attorneys and those persons in active concert or participation with them:

1.     From using the JET911 Trademark or any mark similar thereto in connection with the sale of any unauthorized goods or the rendering of any services;

2.     From using any logo, trade name, or trademark that may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Defendant or of third parties are sponsored by, authorized by or in any way associated with Plaintiff;

3.     From otherwise unfairly competing with Plaintiff;

4.     From falsely representing himself as being connected with Plaintiff or sponsored by or associated with Plaintiff or engaging in any act which is likely to falsely cause the trade, retailers or members of the purchasing public to believe that Defendant is associated with Plaintiff;

5.     From falsely misrepresenting in commercial advertising or promotion the nature, characteristics and qualities of Defendant's services;

6.     From using any reproduction, counterfeit, copy, or colorable imitation of the JET911 Trademark in connection with the publicity, promotion, sale, or advertising of services sold by Defendant; and,

7.      From affixing, applying, annexing, uttering, broadcasting, uploading, or using in connection with the sale of any goods or services, a false description or representation, including words or other symbols, tending falsely to describe or represent such goods or services as being those of Plaintiff and from offering such goods or services in commerce.

B.      That Defendant be required, at Plaintiff's election, either (i) to pay Plaintiff statutory damages as provided for under 15 U.S.C. § 1117(d) or (ii) account to Plaintiff for all profits resulting from defendant's infringing activities and that such award of profits to Plaintiff be increased by the Court as provided for under 15 U.S.C. § 1117(a).

C.      That Plaintiff have a recovery from Defendant of the costs of this action and Plaintiff's reasonable counsel fees pursuant to 15 U.S.C. § 1117.

D.      That Defendant be ordered to transfer ownership of the Jet911.com domain name to Plaintiff.

E.      That Defendant be ordered to deliver up to Plaintiff for destruction all labels, stickers, signs, prints, packages, wrappers, receptacles, advertisements and other written or printed material in their possession, custody or control that bear the JET911 Trademark, alone or in combination with any other words, marks or other elements.

F.      That Plaintiff be awarded punitive damages for Defendant's willful and unlawful misconduct.

G.      That the Court order and adjudge that Defendant is not a partner, owner, beneficial owner, shareholder, or otherwise entitled by reason of law or equity to an equivalent interest thereto in Jet911, LLC.

28

H.    That the Court issue a writ of replevin and otherwise award Plaintiff damages in connection for Defendant's unlawful possession and retainer of Plaintiff's property and for any damage thereto including lawful rent, fees and other compensation to be paid by Defendant to Plaintiff for Defendant's use of the same.

I.    That Plaintiff have all other and further relief as the Court may deem just and proper under the circumstances.


_Ronald D. Coleman_

Kate A. Sozio, Esq. (KS 3530)
**ARCHER & GREINER**
A Professional Corporation
21 Main Street, Suite 353
Hackensack, NJ 07601
rcoleman@archerlaw.com
*Attorneys for Plaintiff Jet911, LLC*

Dated: June 6, 2016

29

## VERIFICATION

Eli Rowe, of full age, certifies and says as follows:

    1.    I am the owner and founder of Jet911, LLC and the same Eli Rowe referred to in the Allegations in the foregoing Verified Complaint, whose allegations I have reviewed.

    2.    I verify under penalty of perjury that the facts set forth in the Verified Complaint are true and correct to the best of my knowledge.

    3.    I understand that if any of the foregoing is knowingly false, I am subject to punishment.

Executed this 6thday of June, 2016

ELI ROWE

30